UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 18-CR-142-LM |
| | ) | |
| | ) | |
| JARROD HOAGE | ) | |
| | ) | |

Defendant's Sentencing Memorandum

Jarrod Hoage respectfully submits this memorandum in support of his proposed sentence

of 12 months and 1 day in prison (with a judicial recommendation that the sentence be served

at FMC Devens); 3 years of supervised release with the first 6 months on home confinement;

and restitution in the amount of $1057.00.  Holistically considering the Section 3553(a) factors,

this would be a just sentence in this case.

In support of this sentencing recommendation, the defense requests that the Court

consider the following.[1]

---

[1] In the advisory guidelines regime, the framework for sentencing is well-established:  The court "shall impose a sentence sufficient, but not greater than necessary," to accomplish the purposes of sentencing, considering  "the nature and circumstances of the offense and the history and characteristics of the defendant;"  "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;"  "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" as well as the applicable guideline sentencing range.  18 U.S.C. §3553(a).  The applicable guideline sentencing range, is "the starting point and initial benchmark.  " *Gall v. United States*, 552 U.S. 38, 49 (2007).  "The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Id*. at 49-50.

JARROD'S HISTORY AND CHARACTERISTICS

 Jarrod's post-offense compliance with his psychiatric medications and treatments, his strong record of and commitment to recovery from substance abuse, his responsible and caring attitude towards his family and work, and the out-of-character nature of the instant offense are mitigating factors that this Court should consider in fashioning a just sentence.

 Mental Health

 While he displayed earlier signs of needing mental health treatment, Jarrod was not diagnosed with a psychiatric condition until 2016.  PSR ¶ 56-57. And it was only in the aftermath of the instant offense that he embarked on a steady course of mental health treatment at the Goodwin Community Health Center.  PSR ¶ 54-61; Exhibit 1 (letter from Goodwin psychiatric nurse); Exhibit 2 (letter from Goodwin counselor); Exhibit 3 (Dr. Drukteinis report) (These three exhibits are being filed under seal).

 Jarrod, who has been diagnosed with Schizoaffective Disorder, Bipolar Type, has been compliant with his treatment recommendations for this condition. Exhibit 1. As a result, as Dr. Drukteinis notes, Jarrod is "more stable that he has been perhaps ever in his life."  Exhibit 3 at 5. In his counselor's words, Jarrod "has demonstrated an extraordinary degree of commitment, determination, and perseverance in his effort to improve his health and wellbeing, resulting in an overall sustained improvement in his effective functioning in the world."  Exhibit 2.

Substance Abuse

Jarrod began abusing opiates in the aftermath of treatment with opiates prescribed following surgery on his wrist in his late teens. PSR ¶ 63. By the time of the instant offense, he was abusing both heroin and cocaine.

Jarrod has made tremendous strides in addressing his substance use. At Goodwin, he completed the IOP program and has diligently participated in regular counseling sessions. PSR ¶ 65-66; Exhibit 2.  As his sponsor puts it, Jared has been "100% serious" in his commitment to his recovery efforts.  Exhibit 4.

An important component of Jarrod's substance abuse treatment has been the prescribed use of methadone. ¶ 65.  Jarrod has worked with his treatment provider to steadily reduce his methadone dose, especially in light of his impending incarceration. The combination of the reduced dosage and Jarrod's heightened anxiety about his upcoming sentencing hearing resulted in a temporary setback during the week of September 30, but Jarrod has since worked diligently with his supervising probation officer Janice Benard and his treatment providers at Goodwin to address the matter by ramping up his treatment at Goodwin.

Family and Work

Jarrod's mother has written the Court about Jarrod's personal transformation, as reflected in his relationship with her.  Exhibit 5.  After he became addicted to drugs, Jarrod's personality changed: he stole from her and yelled at her.  But mental health and substance abuse treatment have caused remarkable changes in him. He shows his appreciation for his mother by buying her small gifts and cards.   He helps around the house by chopping and stacking wood, going to the

recycling center, and buying groceries.  For his mother Gail Hoage, who suffers from degenerative arthritis, these steps are of enormous practical importance.  But even more important to her is that "he is that kind kid again, the one I had forgotten."  Exhibit 5 at 2.

Gail Hoage has also noted the dramatic change in Jarrod's attitude towards work. Jarrod has a history of steady employment, but his mother notes that he often used to show up late for work. Now, he is a stellar employee at Clean Water Car Wash, where the quality of his work is reflected in the full-page letter his employer has written on his behalf.  Exhibit 6. Jarrod is "intelligent, capable, [and] dedicated." He is a "trustworthy individual" who "handles any and all situations with thoughtfulness and maturity." *Id.*

NATURE AND CIRCUMSTANCES OF THE OFFENSE

On June 5, 2018, Jarrod walked into the Northeast Credit Union in Rochester, approached a clerk, apologized to her, and handed her a note demanding money.  PSR ¶ 9. Jarrod, who lived then (as now) with his mother in the nearby town of New Durham made no effort to mask his identity, and his image was clearly captured by the bank video and posted to Facebook by the police, leading quickly to his arrest. PSR ¶ 11.

There can be no doubt that this was a scary experience for the bank clerk, especially given Jarrod's note, which she recalled to say words to the following effect: "give me all $ you can no one get hurt quick."  PSR ¶ 9. Jarrod is deeply remorseful for his actions, which wrongfully subjected the clerk to this experience.

In the period leading up to the robbery, Jarrod was experiencing manic episodes.  Dr. Drukteinis report at 3. On the day of the robbery, he had stopped using his psychiatrist medications and relapsed in his drug use. *Id.* at 6. He went to see his counselor at Living

Solutions, but when no one responded, he impulsively went to the TD Bank in the same building and wrote the demand note. When he thought he was spotted or followed, he went to the Northeast Credit Union, 0.1 mile away, and present the note to the teller.

Jarrod was not insane; his actions were caused neither by delusions nor hallucinations. Dr. Drukteinis Report at 6. Rather, these were impulsive actions motivated by his addiction. *Id.* He engaged in them with little or no planning, and no rational effort to avoid eventual detection. His actions were deeply wrong, but they were not they were not calculated or sophisticated.

THE ADVISORY FEDERAL SENTENCING GUIDELINES

The total offense level is 19. PSR ¶ 27.   The Criminal History Category (CHC) is II. PSR ¶37.  The resulting advisory Guideline Sentencing Range (GSR) is 33-41 months. PSR ¶ 78.

Examination of Jarrod's criminal history shows that a downward departure to CHC I is warranted.  Such a departure should be applied "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes [.]" U.S.S.G.§4A1.3(b)(1).

Here, Jarrod has received two criminal history points based on the of following two convictions: (1) a willful concealment conviction based on attempting to shoplift $15.22 worth of items in early 2012, when he was 20; (2) a 2014 criminal mischief conviction for kicking and breaking a motel room screen door and panel after an argument. *See* PSR ¶¶ 33, 36. These two minor misdemeanor convictions, for each of which he received a totally or partially suspended fine, substantially over-represent the seriousness of Jarrod's criminal history or the

likelihood that he will commit other crimes. Therefore, a downward departure to CHC I, lowering the GSR to 30-37 months, is appropriate.

The guidelines also allow for a departure for post-offense conduct. While post-offense rehabilitation is a basis for "a discretionary sentence reduction" under Section 3553(a), *United States v. Garcia-Ortiz*, 657 F.3d 25, 30 (1st Cir. 2011), it was already a recognized basis for a departure under Section § 5K2.0(a)(2) in the mandatory guideline regime. *See United States v. Perella*, 273 F. Supp. 2d 162 (D. Mass. 2003) (in bank robbery case, court departed downward to a sentence of probation with 6 months of home detention based on "extraordinary rehabilitation"). Here, Jarrod's transformation into a diligent employee, a responsible son, a medically compliant patient, and his largely successful commitment to sobriety, warrant a significant downward departure. Therefore, the federal sentencing guidelines advise a sentence substantially lower than 30 months.

GOALS OF SENTENCING

Frankly, any sentence of incarceration will significantly set Jarrod back in his rehabilitation efforts. Yet, he recognizes that the seriousness of the offense, promoting respect for the rule of law, and general deterrence probably mean that this Court will consider a substantial period of incarceration as necessary in this case. A sentence of 12 months and 1 day in jail, even for an individual whose rehabilitation has been extraordinary, is sufficient for these purposes.

AVOIDING UNWARRANTED DISPARITIES

While the guidelines can serve to minimize unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, it is not always possible for a two-variable grid to capture the full complexity of individual records and conduct.  Even when the guidelines were mandatory, the Supreme Court recognized that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996).

Where a bank robbery, like this one, is committed impulsively without any planning, the conduct is less culpable in a way that is not recognized by the guidelines.  The aberrant behavior guideline captures this concept, *see United States v. Booe*, 252 F. Supp. 2d 584, 587 (E.D. Tenn. 2003) (departure appropriate where bank robbery was committed without significant planning); *United States v. Langille*, 324 F. Supp. 2d 38, (D. Me. 2004) (same), but the commission has limited that the applicability of that provision to individuals with no more than one criminal history point.  U.S.S.G. § 5K2.20.

As for Jarrod's prior record, its significance is not fully captured by his criminal history points. It is at least as significant in this case that he has no prior conviction involving violence or a threat of violence. This was an offense that was entirely out-of-character for him. Jarrod's record may show him to have been a drug user who engaged in drug possession, petty crime, and impulsive acts; but there is no earlier instance of an act of violence towards a person, or even the threat of such violence.

Judges in this district have recognized that substantial deviations from the guidelines are sometimes appropriate in bank robbery cases (which, as with this case, did not involve cooperation) in order to arrive at a just sentence. *See*, *e.g.*, *United States v. Amanda Bayko*, 11-cr-29-JL (12 month sentence); *United States v. James Aubin*, 18-cr-151-PB (21 month sentence); *United States v. Aaron Pelchat*, 17-cr-120-LM (24 month sentence). This is such a case.

To the extent that confinement is appropriate to achieve the goals of sentencing in this case, home confinement as a condition of supervised release, which would allow Jarrod to resume employment, is a suitable substitute for incarceration beyond one year.

Conclusion

Twelve months and one day of incarceration, three years of supervised release with the first six months on home confinement, and restitution are "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C §3553(a). The defense has no objection to the proposed conditions of probation set forth in the Proposed Sentencing Options and Supervision Conditions. A sentencing recommendation to FMC Devens is requested to allow for Jarrod to receive appropriate medical treatment.

Respectfully submitted,

*/s/ Behzad Mirhashem*
Behzad Mirhashem
N.H. Bar #10031

-8-

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2019 the above document was served electronically upon all counsel of record through the CM/ECF filing system.


/s/ *Behzad Mirhashem*
Behzad Mirhashem